IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 21, 2025 Session

## CHELSEA C. STEWART v. KYLE P. HESTER

**Appeal from the Juvenile Court for Robertson County**
No. 17-41098        Joel W. Perry, Judge

_____

**No. M2024-00685-COA-R3-JV**

_____

This appeal arises from Mother's petition to modify the parties' parenting plan and request that Father be held in contempt for failure to pay child support. After a hearing, the trial court entered an order generally finding that the parties simply had two different parenting styles and denying Mother's request to modify the parenting plan. The trial court also found that the contempt matter had been addressed, but the trial court's order lacked any findings of fact or conclusions of law concerning the alleged contempt. After review, we reverse the trial court's determination that Mother had not proven a material change in circumstances to permit modification of the parenting plan. To that end, the matter is remanded for the trial court to conduct an analysis of whether a change in the parties' parenting plan is in the children's best interest pursuant to Tennessee Code Annotated section 36-6-106(a). Further, we vacate the trial court's order as it relates to the civil contempt action against Father. That matter is remanded as well for additional findings and conclusions related to Father's civil contempt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part, Vacated in Part, and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Kimberley Reed-Bracey Johnson, Goodlettsville, Tennessee, for the appellant, Chelsea C. Stewart.

Paige I. Bernick, Jacqueline B. Dixon, and Ally Aj. Bojczuk, Nashville, Tennessee, for the appellee, Kyle P. Hester.

## OPINION

## I.     FACTUAL AND PROCEDURAL HISTORY

Appellant, Chelsea C. Stewart ("Mother), and Appellee, Kyle P. Hester ("Father"), share two minor children – a daughter (thirteen-years-old) and a son (eleven-years-old) (collectively the "Children"). Mother and Father were never married to each other. Mother is now married and has a two-year-old child with her husband. Father lives with his girlfriend, Jessica Choate.  For approximately three years, the parties operated under a previously entered parenting plan ("Agreed Parenting Plan") that allowed for equal parenting time with neither party being designated the primary residential parent.

On September 14, 2022, Mother filed a Petition for Criminal Contempt against Father in the Juvenile Court of Robertson County, Tennessee ("trial court").  Therein, Mother alleged that Father failed to fulfill his child support obligation for the previous three months.  On October 11, 2022, Mother filed a Petition to Modify the Parenting Plan and for Father to be held in contempt (the "Petition") for multiple reasons. In the Petition, Mother alleged that the Agreed Parenting Plan was no longer in the best interests of the Children, and that there had "been such material and substantial changes in circumstance that it is no longer safe or proper for Father to have equal time with the minor children." Specifically, Mother listed the following, *inter alia*, as examples of material changes in circumstances:

- Father repeatedly failed to properly care for the Children after they were injured in his care (including but not limited to what Father's refers to as a "small backhoe accident" that left his son with a concussion).

- The daughter fell out of a tree during Father's parenting time and he refused to take her to the doctor. Mother later took her and the daughter was found to have a fractured humerus. Mother had not been notified of the fall or that the child was complaining of the injury.

- The daughter also fell from monkey bars during Father's parenting time and complained that her wrist was hurting. Mother was not informed and Father did not take the child to the doctor. When Mother took her to the doctor it was discovered that the child's left wrist was fractured.

- Father's failure to appropriately attend to the Children's illnesses, such as strep throat, while in his care.

- The parties' daughter has engaged in self-harm and suicidal ideations.

- Father left the Children with his girlfriend while he traveled out of town for work and hunting trips although Father's girlfriend has been identified as a source of the daughter's anxiety.

- Father's refusal to timely take appropriate steps to address the daughter's mental health concerns.

- Father has sent his girlfriend and his own mother to the Children's doctor's appointments and educational meetings rather than attending himself – in one instance choosing to wait outside in the car with his dog.

- The son was diagnosed with ADHD and Father failed to timely take steps to help the son, although he eventually agreed to give the son the medication that was prescribed by his physician.

- Father has on more than one occasion admitted to not providing the Children with their prescribed medication although Father has no medical training.

- Father left an issue related to the Children's medical insurance unresolved for an extended period of time.

- Communication between Mother and Father has broken down to the point that Father uses expletives when referring to Mother.

As a result, Mother proposed a modified parenting plan that would name her as the primary residential parent – allowing Mother 285 days with the Children and Father 80 days with the Children. Concerning contempt, Mother first alleged that Father: (1) interfered with her parenting time; (2) failed to follow the notification requirement for out-of-state travel; (3) wrongfully involved the Children in a conversation between him and Mother; and (4) denied Mother her right to telephone calls with the Children. Mother also asked that Father be found in contempt for failure to pay his child support.

On November 17, 2022, Father filed an Answer to the Petition, in which he denied the majority of Mother's allegations. Father also filed a Counter-Complaint for Relief ("Counter-Complaint") wherein he asserted that Mother was voluntarily underemployed and asked the trial court to modify his child support obligation.

On February 28, 2024, and April 24, 2024, the Juvenile Court Magistrate (the "Magistrate") heard Mother's Petition and Father's Answer and Counter-Complaint. The Magistrate heard testimony from Mother, Father, Ms. Choate, and Delvin Hester (the Children's paternal grandfather). On May 1, 2024, the Magistrate entered its order. As an initial matter, the Magistrate specifically found all witnesses to be credible. Concerning the parenting plan, the Magistrate found that "Mother did not meet her burden" and ordered

- 4 -

that the Agreed Parenting Plan would remain in effect. Under the heading "Civil Contempt," the order provided that the Magistrate had "addressed" the issue of Father's contempt by ordering him to pay an arrearage. Under the heading "Child Support," the Magistrate found that Mother was not intentionally underemployed and did not modify Father's child support obligation. Finally, the Magistrate ordered that both parties were required to pay their own attorneys' fees.

On May 8, 2024, Mother appealed the Magistrate's rulings and requested judicial review from the Juvenile Court Judge. On May 10, 2024, Mother filed her exceptions to the Magistrate's ruling. On May 21, 2024, the Juvenile Court Judge entered an order upholding the order of the Magistrate as the final order of the trial court and denying Mother's appeal to modify the order. On May 28, 2024, Mother filed a pleading requesting clarification of the issue of corporal punishment. On June 27, 2024, the Juvenile Court Judge entered an order clarifying that only the Children's biological parents were permitted to engage in corporal punishment.

On May 8, 2024, Mother filed a Notice of Appeal with this Court of the Magistrate's May 1, 2024 order. On July 15, 2024, Mother filed an Amended Notice of Appeal with this Court to include the Juvenile Court Judge's May 21, 2024, and June 27, 2024 orders.

## II.    ISSUES

Mother sets forth the following issues in her brief for this Court's review on appeal:

1. Should Mother's request to modify and adopt her proposed permanent parenting plan have been approved, granted, and entered as an order of the trial court below as there existed such a material and substantial change in circumstance that it is no longer in the best interest of the minor children for the present parenting plan to remain in full force and effect, fifty/fifty not being in the best interest of the children.

2. Should Mother's request for criminal contempt have been granted by the trial court below as the Father interfered with the Mother's parenting time, traveled with the children out of state without notification, monitored her calls by placing her on speaker phone in violation of the parenting plan, and had the children listen in to parental conversations on parenting decisions, admittedly, so that Father would not be "the bad guy" (as he called it) to the children.

3. Should Mother's request to find Father in willful civil contempt for his admitted failure to timely pay child support and dental/medical expenditures have been granted?

4. Should Mother's request for Father to pay the totality of the guardian ad litem fees have been granted?

5. Should Mother's request for her reasonable attorney fees and costs incurred in this cause have been granted?

### III.    LAW AND ARGUMENT

1. MODIFICATION OF THE PARENTING PLAN

We first address Mother's issue concerning modification of the Agreed Parenting Plan. "Once a permanent parenting plan has been [established,] the parties are required to comply with it unless and until it is modified as permitted by law." *Armbrister v. Armbrister,* 414 S.W.3d 685, 697 (Tenn. 2013) (citing Tenn. Code Ann. § 36-6-405). In Tennessee, courts conduct a two-step analysis when determining whether to modify a

permanent parenting plan. The threshold question is whether a material change in circumstances has occurred since entry of the trial court's previous order. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). If the court finds a material change, then it must conduct a best interest analysis and determine whether modification is in the child's best interest. *Armbrister*, 414 S.W.3d at 698; *see also* Tenn. Code Ann. § 36-6-106(a).

> Concerning a material change in circumstances, this Court has explained
>
> that "[a] change in circumstance with regard to a residential parenting schedule is 'a distinct concept' from a change in circumstance with regard to custody." *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015) (quoting *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007)); *see also* Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). Although both changes must be proved by a preponderance of the evidence, *see* Tenn. Code Ann. § 36-6-101(a)(2)(B), (C), the threshold for establishing a material change in circumstances where the issue before the trial court is a modification of the residential parenting schedule is much lower than what is required to establish a material change in circumstances to modify the primary residential parent, *i.e.,* custody. *Burnett*, 2015 WL 5157489, at *6. As an initial matter, "[a] material change of circumstance does not require a showing of a substantial risk of harm to the child" under either modification. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i), (C). Concerning a modification of custody, Tennessee Code Annotated section 36-6-101(a)(2)(B)(i) provides that "[a] material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). Concerning a modification of the residential parenting schedule, Tennessee Code Annotated section 36-6-101(a)(2)(C) provides that a material change of circumstances
>
>> may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a

change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C).

*In re Jonathan S.*, No. M2021-00370-COA-R3-JV, 2022 WL 3695066, at *8 (Tenn. Ct. App. Aug. 26, 2022).

Turning to our review of the trial court's order, we are mindful of the following:

> "[D]ecisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister*, 414 S.W.3d at 693). The Tennessee Supreme Court has repeatedly emphasized "the *limited* scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments." *C.W.H.*, 538 S.W.3d at 495. According to the court, "'[a] trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions.'" *Id.* (quoting *Armbrister*, 414 S.W.3d at 692). Therefore, on appeal, we presume that the trial court's factual findings on these issues are correct, and we will not overturn them unless the evidence preponderates against them. *Id.*

*In re Makinna B.*, No. M2018-00979-COA-R3-JV, 2019 WL 2375434, at *2 (Tenn. Ct. App. June 5, 2019).

In the case at hand, the trial court found that Mother "did not meet her burden and [] the Petition for *Modification* fails and shall be DISMISSED." Although it is not specifically

stated in Mother's Petition or appellate brief whether she is seeking to modify the primary residential parent designation, *i.e.*, custody or the residential parenting schedule, we deduce from Mother's proposed parenting plan, that she is seeking to modify both. Indeed, under her proposed plan, Mother designated herself as the Children's primary residential parent and awarded herself 285 days with the Children compared to Father's 80 days with the Children. Accordingly, the trial court was required to make findings concerning whether Mother proved, by a preponderance of the evidence, a material change in circumstances as required under both Tennessee Code Annotated section 36-6-101(a)(2)(B)(i) and Tennessee Code Annotated section 36-6-101(a)(2)(C).

The vast majority of the trial court's order in this case is dedicated to generalities about how Mother and Father did not appear to like each other, describing Father's reaction to the Children's medical and mental health needs as an "agree to disagree approach," and concluding that the issues raised were not "profound or striking," but rather "common encounters with the upbringing of children." The trial court then concluded by stating that if, in the future, "either Mother or Father refuses to [continue to co-parent], and it can be shown by compelling proof that he/she is refusing to co-parent, then certainly the refusing parent would greatly risk their respective time being reduced or altered[, but t]here was no proof that either parent was not willing nor facilitating co-parenting with one another." In coming to this conclusion, the trial court found that the circumstances – such as the changes in the Children's mental and physical health and the breakdown in communication between the parents – did not amount to a material change in circumstances. Instead, the trial court

appears to have determined that both parents were doing the best they could and it was best to leave the Agreed Parenting Plan as it was. Based on this, the trial court determined that "Mother did not meet her burden," that the Petition "failed," and that it should be dismissed.

We disagree. Although the applicable standard of review requires this court to give great deference to the trial court's findings of fact, we note that the trial court's order contains little for meaningful review. After a thorough and independent review of the record, we conclude that preponderance of the evidence in this case reflects that there has been a material change in circumstances since the entry of the Agreed Parenting Plan. "Tennessee Code Annotated section 36-6-101(a)(2)(B)(i) provides that "[a] material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." *In re Jonathan S.*, No. M2021-00370-COA-R3-JV, 2022 WL 3695066, at *8 (Tenn. Ct. App. Aug. 26, 2022) (discussing TCA § 36-6-101(a)(2)(B)(i)). The proof in the record is that: (1) Father repeatedly failed to timely care for the Children when they were injured during his parenting time; (2) Father repeatedly failed to timely and appropriately address the Children's illnesses during his parenting time; (3) daughter had begun engaging in self-harm and suicidal ideations; (4) Father often left the Children in the care of his girlfriend during his parenting time when he traveled for work or hunting trips, despite his girlfriend being a source of the daughter's anxiety; (5) Father admitted that he, on more than one occasion, did not provide the Children with their prescribed medications; (6) Father interfered with Mother's parenting time; (7) Father

- 10 -

failed to follow the notification requirement for out-of-state travel; and (8) Father denied Mother her right to telephone calls with the Children. In light thereof, we conclude that Mother has carried her burden of proving that a material change in circumstances has occurred in order for the trial court to consider whether a modification of the Agreed parenting Plan is warranted.

With this threshold determination being met, we remand this matter to the trial court to conduct a statutory best interest analysis in accordance with Tennessee Code Annotated section 36-6-106(a) and determine whether a modification of the Agreed Parenting Plan is in the children's best interests.

2. CRIMINAL CONTEMPT

Mother's next issue for review is whether her request for criminal contempt should have been granted due to Father's interference with Mother's parenting time and other violations of the parenting plan. However, as Father notes in his appellate brief, Mother has not appealed any order of the trial court denying her request that Father be held in criminal contempt. From our review of the record, Mother's only request to hold Father in *criminal* contempt was filed on September 14, 2022, in her Petition for Criminal Contempt, which concerned Father's alleged failure to remit child support payments. As noted above, Mother later filed the Petition on October 11, 2022. In the Petition, Mother requested:

5. The Father be found in willful civil contempt for his failure to pay child support as [o]rdered and punished at the [c]ourt's discretion until such time as the Father pays his arrearage in full. . . .

6. For the Father to be found in willful contempt for his refusal to follow the mandates of the parenting plan . . . .

As shown above, Mother did not ask the trial court to hold Father in *criminal* contempt in the Petition. Moreover, Mother failed to file with the Petition the Rule 42 notice that is required in criminal contempt proceedings, *see* Tenn. R. Crim. P. 42(b), despite her filing this required notice alongside her September 14, 2022 Petition for Criminal Contempt. Accordingly, we conclude that Mother did not ask the trial court to hold Father in *criminal* contempt in the Petition. The final order of the trial court, which Mother has appealed, specifically states that it considered Mother's Petition and Father's Answer and Counter-Complaint. There is no mention in the order that the trial court considered the Petition for Criminal Contempt. As such, the issue of whether Father was ever in criminal contempt is not properly before this Court. Mother is not entitled to relief on this issue.

### 3. CIVIL CONTEMPT

Mother next asks this Court to determine whether the trial court should have granted her request to find Father in willful civil contempt for his admitted failure to timely pay child support and dental/medical expenditures. However, we cannot determine from the trial court's order whether it actually granted Mother's request. The trial court's order states that it

> finds the basis for the relief for finding of contempt has been addressed by the [c]ourt ordering [F]ather to pay the stipulated arrears . . . in full within 2

(two) weeks of oral order to do so. Further, [] Father shall pay his portion of medical/orthodontia . . . within the same 2 (two) weeks.

Although the trial court stated that the issue of contempt had been "addressed," it failed to make the requisite findings of fact or conclusions of law in the order. As the Tennessee Supreme Court has explained, there are four elements that courts must consider in civil contempt matters, whether: (1) the order alleged to have been violated was "lawful;" (2) the order alleged to have been violated was "clear, specific, and unambiguous;" (3) the party facing contempt actually violated the order; and (4) the party facing contempt "willfully" violated the order. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 355-58 (Tenn. 2008). "After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt." *Id.* at 358. Because it is unclear from the trial court's order whether Father was held in civil contempt, we cannot adequately address this issue. Accordingly, we vacate the trial court's order concerning civil contempt and remand this issue for further written findings and conclusions by the trial court.

4. GUARDIAN AD LITEM FEES AND ATTORNEY'S FEES

Finally, in the "Issues" section of Mother's appellate brief, she asks the following:

- Should Mother's request for Father to pay the totality of the Guardian Ad Litem fee have been granted.

- Should Mother's request for her reasonable attorney fees and costs incurred in this cause have been granted.

- 13 -

However, the entirety of Mother's argument in her brief on these issues is a total of one paragraph with two sentences. It is set forth below:

> The Mother requested all of the aforementioned [attorney fees, court costs, deposition costs, court reporter fees and mediation costs as well as guardian ad litem fees] for having to bring this claim. Due to the Father's egregious behaviors, admitted contempts, and his behaviors necessitating the Mother's filing, the Mother should have been awarded all of same.

Mother includes no citations to the record, and cites no case law, no statute, nor any other legal authority to support her position that the trial court erred in not awarding her the foregoing relief. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure requires "the appellant with respect to the issues presented" to set forth "the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record," as well as the applicable standard of review for each issue. Tenn. R. App. P. 27(a)(7). "An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). Mother's brief on the issues of the payment of the guardian ad litem fees, attorneys' fees, costs, and the like wholly fails to comply with Rule 27(a)(7), which would provide this Court with a meaningful explanation of her allegations of error on appeal. To that end, these issues are deemed waived.

## IV. CONCLUSION

For the foregoing reasons, we reverse the trial court's conclusion that Mother failed to meet her burden of proving that there has been a material change in circumstances since the entry of the Agreed Parenting Plan. We remand this matter for the trial court to consider whether modification of the Agreed Parenting Plan is in the children's best interests in accordance with the factors set forth in 36-6-106(a). Further, we vacate the trial court's order as to the issue of Father's civil contempt, and we remand the matter for additional findings of fact and conclusions of law related thereto. Nothing herein shall be construed as precluding Mother from requesting attorney's fees and costs at the rehearing on Father's civil contempt. Costs on appeal are assessed one-half to Appellant, Chelsea C. Stewart, and one-half to Appellee, Kyle P. Hester, for which execution may issue if necessary.

s/ Valerie L. Smith
VALERIE L. SMITH, JUDGE